IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JOHN NORVELL, individually and on
behalf of all others similarly situated                                    PLAINTIFF

v.                                          Case No. 3:21-cv-00233 KGB

DEDMAN'S SANITATION
and JIM DEDMAN                                                              DEFENDANTS

## ORDER

Before the Court is plaintiff John Norvell's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 10). Defendants Dedman's Sanitation and Jim Dedman responded to the motion (Dkt. No. 12), and Mr. Norvell replied (Dkt. No. 13). For the following reasons, the Court grants in part and denies in part Mr. Norvell's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 10).

## I.      Background

Mr. Norvell brings this proposed collective action against defendants alleging wage violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq.* (Dkt. No. 1).

Separate defendant Dedman's Sanitation is a sanitation and waste disposal service in Arkansas owned and operated by separate defendant Mr. Dedman (*Id.*, ¶¶ 12–13). Mr. Norvell alleges that he was employed by defendants as a "Driver" within the three years preceding the filing of this lawsuit (*Id.*, ¶¶ 22–23). He alleges that defendants employed other "Drivers" to drive garbage trucks as well as "Helpers," who accompanied Drivers on their routes and assisted Drivers in picking up trash (*Id.*, ¶¶ 30–31). According to Mr. Norvell, he and other Drivers and Helpers

were paid a piece rate per completed route; he claims they were not paid for time spent on routes that they did not complete (*Id.*, ¶¶ 32–35).  Mr. Norvell alleges that defendants deprived him and other Drivers and Helpers of proper overtime compensation for all hours worked over 40 per week (*Id.*, ¶ 55).  In the present motion, Mr. Norvell seeks conditional certification for the following collective:  "All piece-rate Drivers and Helpers who worked for Defendants Dedman's Sanitation and Jim Dedman, at any time on or after November 5, 2018."  (Dkt. No. 10-1, at 1).

## II.    Governing Law

Under the FLSA:

> An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

District courts in the Eighth Circuit, including this one, utilize a two-step approach to determine whether certification of a collective action is appropriate.  *See, e.g., McChesney v. Holtger Bros.*, Case No. 4:17-CV-824-KGB, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Cruthis v. Vision's*, Case No. 4:12-CV-244-KGB, 2013 WL 4028523, at *1 (E.D. Ark. Aug. 7, 2013); *Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-CV-843-KGB, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012).  Under this approach, a district court first determines whether the putative collective action members are similarly situated (*i.e.*, whether they were subject to a common employment policy or plan), and then, at the conclusion of discovery, the district court provides an opportunity for the defendant to move to decertify the collective action, pointing to a more developed record to support its contention that the opt-in plaintiffs are not, in fact, similarly

situated to the named plaintiffs.  *See Smith v. Frac Tech Servs., Ltd.*, Case No. 4:09-CV-679-JLH, 2009 WL 4251017, at *1 (E.D. Ark. Nov. 24, 2009).

"To establish that conditional certification is appropriate, the plaintiffs must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)).  Plaintiffs' burden at the "notice" stage is "lenient" and "requires only a modest factual showing; it does not require the plaintiff[s] and the potential class members to show that they are identically situated."  *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689–90 (W.D. Mo. 2007)).  Still, "'more than mere allegations' are required" for plaintiffs to carry their burden.  *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016) (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs."  *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citing *Rappaport v. Embarq Mgmt. Co.*, Case No. 607CV468ORL19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007)).  Factors to be considered include:  (1) whether plaintiffs all held the same job titles; (2) whether plaintiffs worked in different geographical locations; (3) the extent to which the claimed wage-and-hour violations occurred during different time periods and by different decision makers; and (4) whether plaintiffs all alleged similar, though not identical, wage-and-hour violations.  *See McChesney*, 2019 WL 118408, at *2 (citing *Stone v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D. Fla. 2001)).  "The Court does not need to determine whether class members are actually similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class."  *Tinsley v.*

*Covenant Care Servs., LLC*, Case No. 1:14-CV--00026 ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (citing *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010)).   At this stage, the district court also does not "make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Israsena v. Chalak M&M AR1 LLC*, Case No. 4:15-CV--00038-JLH, 2015 WL 13648567, at *2 (E.D. Ark. Oct. 14, 2015) (quoting *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014)).

### III.    Discussion

#### A.    FLSA Conditional Certification

Mr. Norvell moves the Court to certify conditionally the following proposed collective: "All piece-rate Drivers and Helpers who worked for Defendants Dedman's Sanitation and Jim Dedman, at any time on or after November 5, 2018."  (Dkt. No. 10-1, at 1).  In support of the instant motion, Mr. Norvell offers his own declaration (Dkt. No. 10-6).

Mr. Norvell states that he was employed by defendants as a Driver from approximately January 2018 until January 2021(*Id.*, ¶¶ 3, 5).  As a Driver, Mr. Norvell states that his primary job duties included driving defendants' garbage trucks and picking up garbage (*Id.*, ¶ 6).  Mr. Norvell asserts that defendants also employed "Helpers," who assisted Drivers in picking up trash but did not drive the truck (*Id.*, ¶ 7).

Mr. Norvell represents that defendants paid him $110.00 per route, and he generally completed one route per day (*Id.*, ¶ 10).  According to Mr. Norvell:

> My shift generally was Monday from 6:30 am to around 7 pm, Tuesday from 6:30 am to around 4:30 pm, Wednesday from 6:30 am to around 8 pm, Thursday from 6:30 am to around 1:30 pm, and Friday from 6:30 am to around 3:30 am.  If the truck I was driving broke down on the route, which happened occasionally, my shift wouldn't end until much later. . . .

(*Id.*, ¶ 12).  As a result, Mr. Norvell estimates that he regularly worked 45 to 55 hours per week (*Id.*).  He alleges that defendants did not pay him an overtime premium for the hours he worked over 40 per week (*Id.*, ¶ 14).

Mr. Norvell claims that other Drivers and Helpers were also paid by defendants per route completed; that other Drivers and Helpers also often worked more than 40 hours per week; and that other Drivers and Helpers were also not paid an overtime premium for hours worked over 40 per week (*Id.*, ¶¶ 11, 13, 15).  According to Mr. Norvell, these assertions are based on his own observations and discussions with other Drivers and Helpers (*Id.*).  Mr. Norvell estimates that there are at least 20 other individuals who work or have worked for defendants as Drivers and Helpers over the last three years (*Id.*, ¶ 16).

Defendants do not oppose Mr. Norvell's request for conditional certification at this stage of the litigation "for the purpose of providing notice of the action to potential opt-in members of the conditional collective." (Dkt. No. 12, ¶ 1).

Having carefully reviewed the motion and related filings, the applicable legal authorities, and the entire record in this matter, the Court finds that Mr. Norvell's declaration offers evidence sufficient to show that all members of the proposed collective were subject to a common policy or plan:  defendants' failure to pay overtime premiums for all hours worked over 40 in a single workweek.  On this basis, the Court finds that Mr. Norvell has carried his lenient burden of establishing that he is similarly situated to other Drivers and Helpers.

Accordingly, the Court conditionally certifies this action as a collective action pursuant to § 216(b) of the FLSA for the purpose of facilitating notice to current and former piece-rate-paid Drivers and Helpers who meet the class definition.

### B.    Notice

Mr. Norvell requests that the Court ratify the following notice process as it pertains to potential opt-in plaintiffs:  Mr. Norvell would send notice and consent to join forms to potential opt-in plaintiffs *via* U.S. Mail and email (Dkt. Nos. 10-1, 10-2, 10-3), and the Court would set a 90-day opt-in period (Dkt. No. 10, ¶ 9).  Mr. Norvell would also distribute a follow-up reminder notice *via* U.S. Mail or email to potential opt-in plaintiffs who do not respond within 30 days of sending notice (Dkt. Nos. 10-3, 10-4).  Additionally, Mr. Norvell requests that defendants be required to post the notice in a conspicuous location at their facilities in the same areas in which they post government-required notice (Dkt. No. 10, ¶ 10).  Finally, Mr. Norvell asks that the Court direct defendants to provide the names and last known telephone numbers, mailing addresses, and email addresses of potential opt-in plaintiffs in an electronically malleable format, such as Excel, no later than seven days after the entry of this Order (*Id.*, ¶ 9).

Defendants do not oppose Mr. Norvell's proposed notice procedures, but defendants request that the notice to potential opt-in plaintiffs contain a cost-shifting provision (Dkt. No. 12). Specifically, defendants request the following additional language:  "'If you do not prevail on your claim, court costs and expenses may possibly be assessed against you.'  *Daniels v. Quapaw Baths, LLC*, 2020 WL 8182193, at *4 (W.D. Ark June 12, 2020)." (*Id.*, ¶ 5).  In response, Mr. Norvell characterizes defendants' request as a "scare tactic" that has been rejected by the majority of courts in the Eighth Circuit (Dkt. No. 13, at 2–3 (collecting cases)).

The Court has reviewed the proposed written and electronic notice and consent forms submitted by Mr. Norvell (Dkt. Nos. 10-1, 10-2, 10-3, 10-4).  The Court declines defendants' request to modify the proposed notice submitted by Mr. Norvell.  Mr. Norvell's proposed written

notice, consent, and follow-up postcard are acceptable (Dkt. Nos. 10-1, 10-2, 10-4), as is the proposed e-mail notice (Dkt. 10-3).

The Court grants in part and denies in part Mr. Norvell's motion as it pertains to notice to potential opt-in plaintiffs (Dkt. No. 10).  The Court grants Mr. Norvell's motion to the extent Mr. Norvell seeks to provide potential opt-in plaintiffs with notice through U.S. Mail and e-mail.  Accordingly, Mr. Norvell may send one written notice and consent form to the potential opt-in plaintiffs through U.S. Mail and email.  Mr. Norvell is permitted to send each potential opt-in plaintiff one reminder notice of the action 30 days after sending the initial notice, either through U.S. mail or email but not through both.

To facilitate notice, defendants are ordered to provide Mr. Norvell's counsel the names, including any aliases or alternative names, last known mailing addresses, and all known e-mail addresses, including personal and company-sponsored, for all piece-rate-paid truck Drivers and Helpers employed by defendants at any time since November 5, 2018, within 14 days from the entry of this Order.  The Court further directs defendants to provide such information to Mr. Norvell's counsel *via* Microsoft Word or Excel formatting.  After receiving such information, Mr. Norvell shall have 90 days to distribute notice and file opt-in consent forms with the Court.

**IV.   Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Mr. Norvell's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 10).

It is so ordered this 10th day of March, 2023.

Kristine G. Baker
United States District Judge